# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
———
(302) 658-9200
(302) 658-3989 FAX

JEREMY A. TIGAN
(302) 351-9106
jtigan@mnat.com

**REDACTED - PUBLIC VERSION**
Original Filing Date: February 5, 2020
Redacted Filing Date: February 12, 2020

**VIA ELECTRONIC FILING**
The Honorable Richard G. Andrews
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801

     Re:    *Galderma Laboratories, L.P., et al. v. Teva Pharmaceuticals USA, Inc.*,
             Civil Action No. 19-351-RGA

Dear Judge Andrews:

     As discussed throughout Galderma's—and its prosecution counsel's (Panitch Schwarze Belisario & Nadel LLP ("Panitch"))—briefing in support of Panitch's motion to quash, (1) Teva's requested discovery is not relevant to the parties' claims or defenses and seeks privileged information; (2) Federal Rule of Civil Procedure 9(b) does not permit Teva to develop a new claim through discovery; and (3) even if Teva were allowed the requested discovery, the requested discovery would not allow Teva to plead inequitable conduct. *See* D.I. 1, 4, 6, 10, C.A. No. 1:19-mc-00347-UNA; *see also* D.I. 86, Ex. 14, Dec. 15, 2019 letter from J. Alibhai to L. Ben-Ami.

     Teva has not pleaded a claim or defense of inequitable conduct and has admitted that all it has done to put Galderma on notice of potential inequitable conduct allegations is in its invalidity contentions. This is insufficient. There is no affirmative defense of inequitable conduct in Teva's answer. The deadline to amend pleadings was August 1, 2019 (*see* D.I. 15 at 1), and Teva has not shown good cause under Federal Rule of Civil Procedure 16 for any amendment. *See also* D.I. 84, Mem. Op., at 1 ("unless [a party] can show 'good cause' – meaning that the 'proposed claims could not have been reasonably sought in a timely manner' – the motion [to amend] should be denied.") & 2-3 ("[T]here is absolutely no explanation why Plaintiffs could not have sought to amend [] at some earlier point than four and one-half months past the deadline for doing so.").

**Teva's requested depositions of Galderma's prosecution counsel and in-house counsel are unduly burdensome and not proportional to the needs of the case.**

     With respect to Teva's far-reaching deposition requests—three depositions of Galderma's prosecution counsel, a 30(b)(6) deposition of Galderma (which would be Galderma's in-house counsel), and a deposition of another of Galderma's in-house counsel (who is located in Switzerland)—Teva does not explain why it needs this burdensome discovery if the only

information it seeks is "whether Galderma personnel were provided with the EC[T]R stipulation during that time" and "who knew of the ECTR Reference, and when." These questions can be answered without five depositions. Galderma already provided Teva with the names of the individuals involved in prosecution of the '939 Patent and the individuals who communicated with patent prosecution attorneys. *See* Ex. 1, Galderma's Objections and Responses to Teva's First Set of Interrogatories, at 20-21 & 23. Galderma has already informed Teva that Panitch had no knowledge of the stipulation. D.I. 6, C.A. No. 19-mc-347-RGA, at 5. And whether Galderma's in-house counsel was aware of the stipulation is irrelevant.

**The ECTR stipulation is not material to the patentability of the '939 Patent.**

Teva claims that with respect to the ECTR stipulation,[1] "attorneys at Galderma [] had breached their duty of candor to the USPTO by failing to disclose material information with an intent to deceive the USPTO, and/or acted with affirmative egregious misconduct." D.I. 86. First, the stipulation is not material unless "the PTO would not have allowed a claim had it been aware of" it. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc). Second, the Notice of Allowance shows that the examiner allowed the claims on grounds beyond the public-accessibility argument Teva alleges conflicts with the stipulation from the *Galderma I* matter. Ex. 2, Notice of Allowance, at 6. For example, there were various claim amendments, terminal disclaimers, and submissions of "data demonstrat[ing] a surprising increase in efficacy" over results disclosed in the prior art. *Id.* And Galderma raised alternative grounds for why the ECTR reference did not anticipate or render the claims obvious "[e]ven assuming that the ECTR were available as prior art." Ex. 2, Notice of Allowance, at 7. These additional bases for allowing the claims, beyond Teva's public-accessibility argument, extinguish Teva's materiality argument and that the PTO would otherwise have rejected the claims. Teva has not shown how taking depositions of Steve Midgley, Jessica Mikus, and Eric Terranova will make the stipulation material. *See* FED. R. EVID. 401(a).

As to Teva's request that Galderma provide the full file history of the '939 Patent, Galderma has already done so. It is unclear what additional documents Teva is seeking.

**Repeat depositions of previously-deposed Galderma witnesses is unduly burdensome and not proportional to the needs of the case.**

The parties agreed that "[a]ll discovery and deposition taken or given in" the earlier action "shall be allowed in this case as if taken in this case." D.I. 15 ¶ 3.a.; *see also* FED. R. CIV. P. 32(a)(8). Teva has requested depositions of witnesses whose depositions were all taken in the first matter. Vincent Manetta and Sandrine Segura are not inventors on the asserted patent in this case (or even the three patents tried in the first matter). Until its February 3, 2020 letter to the Court, Teva had not explained why it needed to re-depose these two witnesses. But even that letter only states that "at least one of whom (Vincent Manetta) is an inventor on prior art patents raised in this case." Teva has asserted the same prior art in both this case and the previous case. It had an opportunity to depose Vincent Manetta on prior art, which it did.

---

[1] Teva claims that "Galderma has since tried to back away from its ECTR Stipulation" in an interrogatory response. But what Galderma did for purposes of narrowing issues for trial in the first matter has no bearing on whether the stipulation is material for purposes of patentability.

_____

As for Jerome Brathwaite, Galderma's Brand Manager, Galderma has already agreed to present him for a limited deposition to provide updated testimony since the time of his last deposition. Teva has not explained why it needs to fully re-depose him. Galderma has also already agreed to present Michael Graeber, who was previously fully deposed in the first matter and is one of the named inventors on the '939 Patent, for a deposition to provide testimony related only to the asserted patent in this case. Again, Teva has not explained why it needs to re-depose him on topics beyond the '939 Patent. The Court should not allow Teva re-depose a witness because Teva is unhappy with how it took depositions in the first case that it agreed would be allowed in this case.

For all these reasons, Galderma respectfully requests that the Court deny Teva's discovery requests in their entirety.

Respectfully submitted,

*/s/ Jeremy A. Tigan*

Jeremy Tigan

cc: All Counsel of Record (via ECF)